Dentons US LLP
Robert A. Hammeke (admitted pro hac vice)
Lauren Macksoud
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800
Email:  robert.hammeke@dentons.com
Email:  lauren.macksoud@dentons.com

*Attorneys for Petitioning Creditor*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Chapter 7 |
| MANOLO BLAHNIK USA, LTD. | |
| | Case No. 20 - 11102 (MG) |
| Alleged Debtor. | |
| Tax I.D. No.: N/A | |

# Table of Contents

**Page**

PRELIMINARY STATEMENT ......................................................................... 5

JURISDICTION AND VENUE .......................................................................... 6

FACTS ......................................................................................................... 6

A.     Re Marcello and Its Relationship with Alleged Debtor............................... 6

B.     Alleged Debtor Owes Re Marcello €949,567.10 ...................................... 7

C.     MB America Succeeded Alleged Debtor as the North American Licensee of
        Manolo Blahnik Branded Products.................................................... 10

D.     MB America Appropriately Agreed to a Stock Exchange with Neiman
        Marcus ...................................................................................... 10

E.     Re Marcello is an Independent Company and Not the Alter Ego of MBIL or
        MB Americas ............................................................................... 12

F.     MB Americas' Sales to and Debt Owed by Neiman Marcus ...................... 13

G.     Alleged Debtor is Not Generally Paying Its Debts as They Come Due...................... 14

H.     Re Marcello Filed The Involuntary Petition in Good Faith....................... 14

ARGUMENT ............................................................................................... 15

Point I    THE INVOLUNTARY PETITION WAS  APPROPRIATELY FILED
         BECAUSE THE DEBT  OWED BY ALLEGED DEBTOR TO RE
         MARCELLO IS NOT THE SUBJECT OF A BONA FIDE DISPUTE ............... 15

        A.     Alleged Debtor Does Not Dispute the Debt Owed to Re Marcello. ............... 15

        B.     Re Marcello Meets Its Initial Burden of Proof to Establish That Its
            Claim is Not Subject to a Bona Fide Dispute. .................................... 16

Point II   ANY DELAY BY NEIMAN MARCUS TO PAY  ALLEGED DEBTOR
         WAS DUE TO THE MISTAKE AND  CONFUSION BY AND
         BETWEEN NEIMAN MARCUS AND  ALLEGED DEBTOR, NOT RE
         MARCELLO'S AFFILIATE'S  INTERACTION WITH NEIMAN
         MARCUS ..................................................................................... 19

Point III  MB AMERICAS DID NOT ACT AS  RE MARCELLO'S AGENT
         WHEN NEGOTIATING  THE STOCK EXCHANGE CREDIT WITH
         NEIMAN MARCUS ....................................................................... 23

**Point IV  MBIL, MB AMERICAS, AND RE MARCELLO ARE NOT ALTER EGOS OF EACH OTHER** ....................................................... **24**

**Point V  ALLEGED DEBTOR IS NOT GENERALLY PAYING ITS DEBTS** ................. **26**

**Point VI  RE MARCELLO FILED THIS CASE IN GOOD FAITH, INCLUDING THAT THE INVOLUNTARY PETITION IS NOT SUBJECT TO DISMISSAL** ............................................................................... **27**

**CONCLUSION** .......................................................................................... **28**

US_Active\115164780\V-2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Austin Powder Co. v. McCullough*,
    216 A.D.2d 825, 628 N.Y.S.2d 855 (3rd Dept., 1995) ...........................................................24

*In re BDC 56 LLC*,
    330 F.3d 111 (2d Cir. 2003), *abrogated on other grounds* by *In re Zarnel*, 619
    F.3d 156 (2d Cir.2010)..........................................................................................................15

*In re Bernard L. Madoff Inv. Securities, LLC*,
    440 B.R. 282 (Bankr. S.D.N.Y. 2010) ..................................................................................20

*In re Century/ML Cable Venture*,
    294 B.R. 9 (Bankr.S.D.N.Y.2003) .........................................................................................26

*In re Drexler*,
    56 B.R. 960 (Bankr. S.D.N.Y. 1986) .............................................................................16, 19

*In re Elsa Design, Ltd.*,
    155 B.R. 859 (Bankr. S.D.N.Y 1993) ........................................................................15, 16, 19

*In re Euro-American Lodging Corp.*,
    357 B.R. 700 (Bankr. S.D. N. Y. 2007) .................................................................................26

*In re Fischer*,
    202 B.R. 341 (E.D.N.Y.1996) ...............................................................................................26

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006).....................................................................................................20

*In re TPG Troy, LLC*,
    793 F.3d 228 (2d Cir. 2015)....................................................................................................15

**Statutes**

11 U.S.C.
    § 303(b)(1) .............................................................................................................................15
    § 303(h)(1) .............................................................................................................................26

28 U.S.C.
    § 157(b)(2)(A).........................................................................................................................6
    § 157(b)(2)(O)........................................................................................................................6
    § 1334(b) ................................................................................................................................6

# PETITIONING CREDITOR'S MEMORANDUM IN
# OPPOSITION TO MOTION TO DISMISS INVOLUNTARY PETITION

Petitioning Creditor Calzaturificio Re Marcello S.R.L. ("Re Marcello") appropriately filed the Involuntary Petition to commence the Chapter 7 bankruptcy case of Alleged Debtor Manolo Blahnik USA, Ltd. ("Alleged Debtor"). The facts and law clearly provide that Alleged Debtor owes no less than the amount identified in the Involuntary Petition, €546,386.00,[1] and that Alleged Debtor has no bona fide dispute about its debt to Re Marcello, and that Alleged Debtor is not generally paying its debts as they come due. Bankruptcy court is the appropriate forum to administer Alleged Debtor's liabilities and assets and to pursue preferential and fraudulent transfers claims. This Court should deny the Motion to Dismiss, and Alleged Debtor's assets and liabilities should be administered in a Chapter 7 proceeding in this Court.

# PRELIMINARY STATEMENT

Alleged Debtor's Motion to Dismiss and supporting papers (collectively, "Motion to Dismiss") are significant only for what they don't provide. Alleged Debtor does not dispute that it owes Re Marcello no less than €546,386.00. Alleged Debtor also does not identify its other creditors and the status and timing of any payments to its other creditors. Instead, the Motion to Dismiss seeks to dismiss this bankruptcy case based on unsupported, conclusory allegations that Re Marcello's affiliate caused Alleged Debtor harm, and Alleged Debtor should be allowed to set off its purported damages against the debt owed to Re Marcello. Alleged Debtor's assertions fail as a matter of fact and law at various critical junctures.

The Motion to Dismiss and this Memorandum in Opposition and supporting papers (collectively, "Memorandum in Opposition") clearly provide that Alleged Debtor is past-due on

---

[1] The Involuntary Petition identifies the amount owed in both Euros and Dollars at the exchange rate published on May 4, 2020, the date the Involuntary Petition was filed. This Memorandum in Opposition will identify amounts in Euros since the parties' discussed amounts owed in Euros.

its obligation to pay Re Marcello €949,567.10 related to Manolo Blahnik branded shoes manufactured by Re Marcello and purchased by Alleged Debtor in September through December 2019.  The Involuntary Petition stated the amount owed as no less than €546,386.00, and Alleged Debtor does not dispute this obligation.  It is equally clear that Alleged Debtor has no right of set off against these obligations.  The Motion to Dismiss does not allege that Re Marcello committed any wrong against Alleged Debtor, the facts establish that no wrong was committed by Re Marcello's parent or affiliate against Alleged Debtor, the facts and law do not support Alleged Debtor not paying Re Marcello because Alleged Debtor has not been paid by its customer, and it is clear that Re Marcello is a separately formed, maintained, and operated company, not an alter ego of other companies.  The Motion to Dismiss should be denied, and the Court should enter an Order of Relief providing that the Involuntary Petition was appropriately filed and ordering Alleged Debtor to comply with its bankruptcy case obligations.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## FACTS

### A.    *Re Marcello and Its Relationship with Alleged Debtor*

Petitioning Creditor Re Marcello is an Italian company that was incorporated in September 1985.  From its facility located in Vigevano (PV), Italy, Re Marcello manufactures luxury products, and Re Marcello has manufactured products sold under the Manolo Blahnik brand since the 1990s.  Until July 2019, Re Marcello was a family-owned and operated company managed by Mr. Bruno Re, Ms. Alessia Re, and Ms. Giuseppina Galazzi.  In July 2019 Manolo Blahnik International Limited ("MBIL") acquired the entire issued share capital of Re Marcello.  MBIL designs, markets and sells luxury apparel, including luxury shoes and accessories, under

the Manolo Blahnik brand. (Declaration of Georgina McManus ("McManus Decl."), ¶¶ 3-4); Declaration of Cardile Antonia ("Cardile Decl.), ¶¶ 4-6 ).[2]

Alleged Debtor acted as an authorized licensee of Manolo Blahnik branded products until December 31, 2019 with authority to sell Manolo Blahnik branded products in North America. (McManus Decl., ¶ 13). When the Alleged Debtor wished to purchase Manolo Blahnik branded shoes, it contacted Re Marcello directly and provided product orders in various forms requesting that Re Marcello manufacture Manolo Blahnik branded shoes for purchase by Alleged Debtor. (Cardile Decl., ¶ 9).

### B.  *Alleged Debtor Owes Re Marcello €949,567.10*

In Summer 2019, Alleged Debtor contacted Re Marcello and made various requests for manufacture of Manolo Blahnik branded shoes for purchase by Alleged Debtor. Re Marcello manufactured the requested Manolo Blahnik branded shoes and made them available for collection by Alleged Debtor throughout November and December 2019. Re Marcello sent Alleged Debtor invoices in November 2019 relating to the Manolo Blahnik branded shoes collected by Alleged Debtor in November 2019. The total amount of the November 2019 invoices is €546,282.00. Alleged Debtor has made no payment relating to the November 2019 invoices, and this amount has been past-due and owing since February 29, 2020. Alleged Debtor also owes Re Marcello €104 relating to a credit that Alleged Debtor improperly applied relating to a September 2019 invoice. (Cardile Decl., ¶¶ 9-14 and Exh. A - summary of November 2019 invoices).

By email dated February 5, 2020, Re Marcello contacted Alleged Debtor regarding payment of the €546,386.00 owed as reflected in the September and November 2019 invoices.

---

[2] Ms. Cardile's Declaration is stated in Italian, and attached to it as Exhibit 1 is a sworn English translation of Ms. Cardile's Declaration.

Alleged Debtor did not respond to this email. By email dated March 10, 2020, Re Marcello again contacted Alleged Debtor regarding the then past-due amount of €546,386.00 relating to the September and November 2019 invoices. When Re Marcello's initial attempts to obtain payment from Alleged Debtor did not result in payment, Re Marcello contacted Georgina McManus, who as part of her responsibilities as the Global General Counsel for Re Marcello's parent company, MBIL, has provided general counsel and attorney support for Re Marcello since its acquisition by MBIL in July 2019. (Cardile Decl., ¶¶ 16-19; McManus Decl., ¶¶17-18).

By email dated March 10, 2020, Ms. McManus contacted Denny Rodriguez, the Comptroller of Alleged Debtor, and inquired whether there was a reason for delay of payment. Denny Rodriguez replied on March 10, 2020, stating that Alleged Debtor would release payment to Re Marcello once it was paid by Neiman Marcus Group Ltd. LLC ("Neiman Marcus"). His email asserted that Neiman Marcus was holding payment due to a supposed return to vendor being discussed by Neiman Marcus and the licensee that replaced Alleged Debtor, Manolo Blahnik Americas LLC ("MB Americas"). Ms. McManus responded to Denny Rodriguez on March 11, 2020, highlighting to him that Alleged Debtor's relationship with Re Marcello was not dependent upon any relationship with Neiman Marcus or MB Americas and that Re Marcello is a company independent of Neiman Marcus and MB Americas. This email made demand for immediate payment. Denny Rodriguez did not respond to this March 11, 2020 email, nor did he or anyone else provide Ms. McManus any additional detail, nor have any additional conversation or communication, regarding the supposed return to vendor[3] being discussed by Neiman Marcus

---

[3] As the facts establish below, MB Americas did not authorize a return to vendor to Alleged Debtor or any credit against the amounts owed by Neiman Marcus to Alleged Debtor. MB Americas authorized a stock exchange with Neiman Marcus, whereby MB Americas agreed that Neiman Marcus could exchange certain old Manolo Blahnik branded stock (originally purchased by Neiman Marcus from Alleged Debtor) for a credit against future purchases by Neiman

and MB Americas.  (McManus Decl., ¶¶ 20-23; Exhibit H to the Declaration of Denny Rodriguez filed in this case).

Despite collection efforts, Alleged Debtor has failed and refused to pay the €546,386.00 that remains owed relating to the September and November 2019 invoices.  Prior to this case being commenced by Re Marcello, Alleged Debtor did not dispute that €546,386.00 is validly due and owing by Alleged Debtor to Re Marcello relating to the September and November 2019 invoices.  (Cardile Decl., ¶¶ 20-21).  Alleged Debtor also does not dispute in its Motion to Dismiss that at least this amount is validly due and owing by Alleged Debtor to Re Marcello.

In addition, Re Marcello sent Alleged Debtor invoices in December 2019 relating to the Manolo Blahnik branded shoes collected by Alleged Debtor in December 2019.  The total amount of the December 2019 invoices is €403,181.10.  Alleged Debtor has made no payment relating to the December 2019 invoices, and this amount has been past-due and owing since March 31, 2020.  Prior to this case being commenced by Re Marcello, Alleged Debtor did not dispute that €403,181.10 is validly due and owing by Alleged Debtor to Re Marcello relating to the December 2019 invoices.  (Cardile Decl., ¶¶ 22-25 and Exh. B - summary of December 2019 invoices).

The total amount of €949,567.10 remains due and owing by Alleged Debtor to Re Marcello.  Prior to MBIL's acquisition of Re Marcello, Alleged Debtor timely paid all invoices sent by Re Marcello relating to Manolo Blahnik branded shoes manufactured by Re Marcello and sold to Alleged Debtor.  (Cardile Decl., ¶¶ 15, 26).

---

Marcus of new Manolo Blahnik branded stock from MB Americas.  Alleged Debtor was never and was never intended to be party to this arrangement.

**C.** **MB America Succeeded Alleged Debtor as the North American Licensee of Manolo Blahnik Branded Products**

Given that Alleged Debtor's license was to expire on December 31, 2019, MBIL, Alleged Debtor and Manolo Blahnik Worldwide Limited (as an affiliate of MBIL and the owner of certain Manolo Blahnik branded trademarks and related intellectual property) entered into a Transition Deed dated November 25, 2019, pursuant to which the parties thereto agreed upon the manner that Alleged Debtor's licensee rights and responsibilities would be transitioned to MB Americas. Given Andrew Wright's role as President of MB Americas, the Transition Deed provided that calls and emails relating to new business in North America that were previously directed to Alleged Debtor be directed to Mr. Wright. (McManus Decl., ¶¶ 14-16; Declaration of Andrew Wright ("Wright Decl."), ¶¶ 7-8).

**D.** **MB America Appropriately Agreed to a Stock Exchange with Neiman Marcus**

The Motion to Dismiss asserts that Alleged Debtor disputes its liability and amount owed to Re Marcello because it asserts Neiman Marcus held payments from Alleged Debtor "due to a dispute over a credit that [Neiman Marcus] sought from [Alleged Debtor] for approximately $38,000 worth of returned men's shoes." Without support, the Motion to Dismiss suggests that Mr. Wright authorized a return to vendor and credit to Neiman Marcus against amounts owed to Alleged Debtor. These assertions are pure speculation and have no factual support. Properly supported facts establish that Mr. Wright only authorized a *stock exchange between Neiman Marcus and MB Americas, not a return to Alleged Debtor.* (Wright Decl., ¶¶ 9-10).

In preparation for replacing Alleged Debtor as MBIL's North American licensee starting on January 1, 2020, MB Americas contacted Neiman Marcus regarding prospective sales on or after January 1, 2020. As part of those discussions, Mr. Wright and others representing MB Americas made clear that they represented MB Americas and no other party, including not Alleged Debtor. Neiman Marcus requested that MB Americas agree to a stock exchange

10

whereby Neiman Marcus could exchange certain Spring 2019 Manolo Blahnik branded shoes originally sold by Alleged Debtor for a credit against Spring 2020 Manolo Blahnik branded shoes to be purchased by Neiman Marcus from MB Americas.  (Wright Decl., ¶¶ 11-13).

It was clear from Mr. Wright's conversations with Neiman Marcus that Neiman Marcus understood that MB Americas was separate from Alleged Debtor and that a credit would be applied to future purchases by Neiman Marcus from MB Americas, not past purchases from Alleged Debtor.  On January 14, 2020, Shelby Arnoldy from Neiman Marcus placed an urgent request for MB Americas to accept 117 items of men's stock for exchange, and she requested the address to which the items should be shipped.  On January 15, 2020, Herin Rodriguez, on behalf of MB Americas, authorized the requested exchange and provided a shipping address for MB Americas in Secaucus, New Jersey.  Despite direction from MB Americas to ship the stock to an address in Secaucus, New Jersey, Neiman Marcus mistakenly shipped this stock to Alleged Debtor's address on 54th Street in Manhattan.  By email dated January 28, 2020, Florencia Vasquez, on behalf of Alleged Debtor, contacted MB Americas and advised that Neiman Marcus mistakenly mailed this stock to Alleged Debtor and that Alleged Debtor had not authorized the return of stock.  Denny Rodriguez was copied on this email.  On January 28, 2020, Herin Rodriguez advised Shelby Arnoldy that Neiman Marcus shipped this stock to an incorrect address, and MB Americas made arrangements, in coordination with Alleged Debtor, for this stock to be picked up from Alleged Debtor and delivered to the Secaucus, New Jersey address. MB Americas received and processed the exchanged stock and has internally accounted a credit of $34,154.40 in favor of Neiman Marcus relating the exchanged items on February 13, 2020. (Wright Decl., ¶¶ 14-20).

Neither Denny Rodriguez, nor anyone else on behalf of Alleged Debtor requested that MB Americas provide information to Neiman Marcus or otherwise assist Alleged Debtor with eliminating any mistake that Neiman Marcus made or any confusion by Neiman Marcus that

caused Neiman Marcus to hold any payment to Alleged Debtor.  Additionally, the email chain attached as Exhibit A to Denny Rodriguez's Declaration filed in support of the Motion to Dismiss provides direct support that, (i) to the extent that Neiman Marcus held payments to Alleged Debtor, it was due solely based on mistakes made by Neiman Marcus and/or Alleged Debtor or confusion by and between Neiman Marcus and Alleged Debtor, not by the representations or actions of MB Americas, and (ii) any such confusion was easily resolved and the correct position (i.e. that the credit should be applied against Neiman Marcus's account with MB Americas and not Neiman Marcus's account with Alleged Debtor) was established by no later than March 6, 2020.  (Wright Decl., ¶¶ 21-22).

Again, MB Americas was clear in its representations with Neiman Marcus that the exchange was not a return to Alleged Debtor, but an exchange with MB Americas in exchange for a credit against future purchases.  As is reflected in the email chain, Denny Rodriguez advised Neiman Marcus on February 14, 2020 and February 24, 2020 that Neiman Marcus had mistakenly held payments from Alleged Debtor because any credits agreed by MB Americas to Neiman Marcus were separate from Alleged Debtor's relationship with Neiman Marcus.  In a responsive email on March 6, 2020, Neiman Marcus agreed with Mr. Rodriguez and authorized payment to Alleged Debtor.  (Rodriguez Decl., Exh. A; Wright Decl., ¶¶ 23-26; McManus Decl., ¶¶ 24-26).

###### E. Re Marcello is an Independent Company and Not the Alter Ego of MBIL or MB Americas

Since it was acquired by MBIL, Re Marcello has been managed by a five member board of directors, including Mr. Bruno Re, Ms. Eva Kristina Hülsebus, Ms. Giuseppa Galazzi, Mr. Frederic Boudet, and Ms. Georgina McManus.  A quorum of four directors is necessary to make management decisions on behalf of Re Marcello.  Re Marcello transacts business separately from its parent, MBIL, and separately from affiliates also wholly-owned directly or indirectly by

MBIL, including MB Americas.  Re Marcello's board of directors differs from the board of directors of MBIL and MB Americas.  The board of directors for MBIL is Mr. Manolo Blahnik, Ms. Eva Kristina Hülsebus, and Ms. Evangelina Rosa Hülsebus.  A quorum of two directors is necessary to make management decisions on behalf of MBIL.  MB Americas is an indirect wholly-owned subsidiary of MBIL.  MB Americas is managed by its sole member, Manolo Blahnik Americas (Holdings) Inc., which is wholly owned by MBIL.  Ms. Eva Kristina Hülsebus is the sole director of Manolo Blahnik Americas (Holdings) Inc.  (McManus Decl., ¶¶ 5-7).

Re Marcello maintains corporate financial records separately from MBIL and MB Americas.  MB Americas and MBIL similarly maintain corporate financial records separately from Re Marcello and each other.  Re Marcello holds corporate board of directors meetings and maintains corporate meeting records separately from MBIL and MB Americas.  MB Americas and MBIL similarly hold management meetings and maintains management records separately from Re Marcello and each other.  Re Marcello is and at all times has been adequately capitalized.  Re Marcello's funds and property are utilized solely for the benefit of Re Marcello, and not for the benefit of MBIL or MB Americas.  Re Marcello deals with MBIL at arm's length.  MBIL purchases product from Re Marcello on arm's length terms designed to deliver a profit margin for Re Marcello that would be appropriate for unrelated, commercial parties doing business of this nature.  MBIL in turn makes sales of Manolo Blahnik branded products to MB Americas on wholesale terms, again structured on arm's length terms to deliver a profit margin appropriate for unrelated, commercial parties doing business of this nature.  (McManus Decl., ¶¶ 8-12; Wright Decl., ¶¶ 4-5).

### F.     MB Americas' Sales to and Debt Owed by Neiman Marcus

From and after it became the North American licensee of Manolo Blahnik branded products on January 1, 2020, MB Americas sold Manolo Blahnik branded shoes and accessories to Neiman Marcus.  In its bankruptcy schedules, Neiman Marcus identified that on the date it

13

filed its bankruptcy case, May 7, 2020, it owed MB Americas $1,041,835.75. MB Americas'
records reflect that Neiman Marcus understated the amount owed to MB Americas on May 7,
2020, so MB Americas filed a proof of claim in the Neiman Marcus bankruptcy in the amount of
$1,268,220.74. (McManus Decl., ¶¶ 27-30; Wright Decl., ¶¶ 27-29).

###### G. *Alleged Debtor is Not Generally Paying Its Debts as They Come Due*

Alleged Debtor is not paying Re Marcello as debts come due. In addition, prior to filing
this case, MBIL contacted other factories that sold goods to Alleged Debtor. Based on those
conversations, MBIL understood, and communicated to Re Marcello, that Alleged Debtor had
not regularly or timely paid two other factory creditors. On March 27, 2020, MBIL also
inadvertently received a past-due collection demand meant solely for Alleged Debtor from
Computer Generated Solutions, Inc. MBIL communicated this to Re Marcello as well. Re
Marcello does not have additional information regarding the creditors of Alleged Debtor, which
creditors remain unpaid, or the timing of payments to creditors of Alleged Debtor. Alleged
Debtor did not provide this information in support of its Motion to Dismiss. Regardless of the
number of creditors that Alleged Debtor has, bankruptcy court is the appropriate forum for
settling Alleged Debtor's financial affairs. Alleged Debtor's failure to pay MBIL, and apparent
inability to do so based on lack of funds, suggests that Alleged Debtor distributed substantial
sums previously reported to exist to its owners as preferential or fraudulent transfers. (McManus
Decl., ¶¶ 31-33).

###### H. *Re Marcello Filed The Involuntary Petition in Good Faith*

Prior to filing the involuntary petition to commence this case, Re Marcello thoroughly
investigated the facts supporting its filing and discussed the applicable law with its counsel that
has entered an appearance in this case. (McManus Decl., ¶ 34).

14

# **ARGUMENT**

For ease of review, this Memorandum in Opposition follows the structure provided in the Motion to Dismiss. The Points asserted in the Motion to Dismiss are based solely on speculation and lack factual support. Also fatal to the Motion to Dismiss, applicable law provides that Re Marcello appropriately filed the Involuntary Petition.

## **Point I**

### **THE INVOLUNTARY PETITION WAS APPROPRIATELY FILED BECAUSE THE DEBT OWED BY ALLEGED DEBTOR TO RE MARCELLO IS NOT THE SUBJECT OF A BONA FIDE DISPUTE**

**A.      Alleged Debtor Does Not Dispute the Debt Owed to Re Marcello.**

A creditor may file an involuntary petition if it has a claim against the alleged debtor that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. 11 U.S.C. § 303(b)(1). The Motion to Dismiss does not assert that Re Marcello does not have a claim against Alleged Debtor, nor does it assert that Re Marcello's claim is contingent as to liability. The Motion to Dismiss, however, asserts that Re Marcello's claim is the subject of a bona fide dispute. This assertion is not supported by facts stated in the Motion to Dismiss, is contrary to the facts supporting this Memorandum in Opposition, and the Motion to Dismiss misapplies applicable law to support this assertion.

Courts apply an objective test in determining whether a bona fide dispute exists. *In re TPG Troy, LLC*, 793 F.3d 228, 234 (2d Cir. 2015), *citing In re BDC 56 LLC*, 330 F.3d 111,117-18 (2d Cir. 2003), *abrogated on other grounds* by *In re Zarnel*, 619 F.3d 156 (2d Cir.2010). There is a bona fide dispute if there is an objective basis to conclude that "there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts." *Id., citing In Re BDC 56 LLC*. The petitioning creditor must establish a *prima facie* case that no bona fide dispute exists. *In re Elsa Designs*,

155 B.R. at 863.  Once established, the burden then shifts to the debtor "to present evidence demonstrating that a bona fide dispute does exist."  *Id.*  Critical to this case, an alleged debtor's asserted counterclaims, even if they have merit, do not render a petitioning creditor's claim subject to bona fide dispute.  *See In re Elsa Design, Ltd.*, 155 B.R. 859, 869 (Bankr. S.D.N.Y 1993) (holding that a counterclaim that lender illegally locked out a borrower did not serve to subject lender's money judgment claim to bona fide dispute); *see also In re Drexler*, 56 B.R. 960, 969 (Bankr. S.D.N.Y. 1986) (unlike affirmative defenses, which go to the underlying obligation, the "debtor's assertion of counterclaims, even if of substance, does not render a petitioner's claim subject to a bona fide dispute").

### B.     Re Marcello Meets Its Initial Burden of Proof to Establish That Its Claim is Not Subject to a Bona Fide Dispute.

Noticeably absent from the Motion to Dismiss is any direct dispute by Alleged Debtor regarding the liability or amount owed to Re Marcello.  Alleged Debtor does not raise a direct dispute because no facts support a direct dispute.  Instead, the material facts establish that Re Marcello meets its initial burden of proof and establishes that it has a non-contingent claim against Alleged Debtor in the amount of €949,567.10.

In Summer 2019, Alleged Debtor contacted Re Marcello and made various requests for manufacture of Manolo Blahnik branded shoes for purchase by Alleged Debtor.  Re Marcello manufactured the requested Manolo Blahnik branded shoes and made them available for collection by Alleged Debtor throughout November and December 2019.  Re Marcello sent Alleged Debtor invoices in November 2019 relating to the Manolo Blahnik branded shoes collected by Alleged Debtor in November 2019.  The total amount of the November 2019 invoices is €546,282.00.  Alleged Debtor has made no payment relating to the November 2019 invoices, and this amount has been past-due and owing since February 29, 2020.  Alleged Debtor also owes Re Marcello €104 relating to a credit that Alleged Debtor improperly applied relating

to a September 2019 invoice.  (Cardile Decl., ¶¶ 9-14 and Exh. A - summary of November 2019 invoices).

By email dated February 5, 2020, Re Marcello contacted Alleged Debtor regarding payment of the €546,386.00 owed as reflected in the September and November 2019 invoices. Alleged Debtor did not respond to this email.  By email dated March 10, 2020, Re Marcello again contacted Alleged Debtor regarding the then past-due amount of €546,386.00 relating to the September and November 2019 invoices.  When Re Marcello's initial attempts to obtain payment from Alleged Debtor did not result in payment, Re Marcello contacted Georgina McManus, who as part of her responsibilities as the Global General Counsel for Re Marcello's parent company, MBIL, has provided general counsel and attorney support for Re Marcello since its acquisition by MBIL in July 2019.  (Cardile Decl., ¶¶ 16-19; McManus Decl., ¶¶17-18).

By email dated March 10, 2020, Ms. McManus contacted Denny Rodriguez, the Comptroller of Alleged Debtor, and inquired whether there was a reason for delay of payment. Denny Rodriguez replied on March 10, 2020, stating that Alleged Debtor would release payment to Re Marcello once it was paid by Neiman Marcus Group Ltd. LLC ("Neiman Marcus").  His email asserted that Neiman Marcus was holding payment due to a supposed return to vendor being discussed by Neiman Marcus and the licensee that replaced Alleged Debtor, Manolo Blahnik Americas LLC ("MB Americas").  Ms. McManus responded to Denny Rodriguez on March 11, 2020, highlighting to him that Alleged Debtor's relationship with Re Marcello was not dependent upon any relationship with Neiman Marcus or MB Americas and that Re Marcello is a company independent of Neiman Marcus and MB Americas.  This email made demand for immediate payment.  Denny Rodriguez did not respond to this March 11, 2020 email, nor did he or anyone else provide Ms. McManus any additional detail, nor have any additional conversation

17

or communication, regarding the supposed return to vendor[4] being discussed by Neiman Marcus and MB Americas. (McManus Decl., ¶¶ 20-23; Exhibit H to the Declaration of Denny Rodriguez filed in this case).

Despite Re Marcello's collection efforts, Alleged Debtor has failed and refused to pay the €546,386.00 that remains owed relating to the September and November 2019 invoices. Prior to this case being commenced by Re Marcello, Alleged Debtor did not dispute that €546,386.00 is validly due and owing by Alleged Debtor to Re Marcello relating to the September and November 2019 invoices. (Cardile Decl., ¶¶ 20-21). Alleged Debtor also does not dispute in its Motion to Dismiss that at least this amount is validly due and owing by Alleged Debtor to Re Marcello.

In addition, Re Marcello sent Alleged Debtor invoices in December 2019 relating to the Manolo Blahnik branded shoes collected by Alleged Debtor in December 2019. The total amount of the December 2019 invoices is €403,181.10. Alleged Debtor has made no payment relating to the December 2019 invoices, and this amount has been past-due and owing since March 31, 2020. Prior to this case being commenced by Re Marcello, Alleged Debtor did not dispute that €403,181.10 is validly due and owing by Alleged Debtor to Re Marcello relating to the December 2019 invoices. (Cardile Decl., ¶¶ 22-25 and Exh. B - summary of December 2019 invoices).

The total amount of €949,567.10 remains due and owing by Alleged Debtor to Re Marcello. Prior to MBIL's acquisition of Re Marcello, Alleged Debtor timely paid all invoices

---

[4] As the facts establish below, MB Americas did not authorize a return to vendor to Alleged Debtor or any credit against the amounts owed by Neiman Marcus to Alleged Debtor. MB Americas authorized a stock exchange with Neiman Marcus, whereby MB Americas agreed that Neiman Marcus could exchange certain Manolo Blahnik branded stock in exchange for a credit against future purchases by Neiman Marcus from MB Americas.

sent by Re Marcello relating to Manolo Blahnik branded shoes manufactured by Re Marcello and sold to Alleged Debtor.  (Cardile Decl., ¶¶ 15, 26).

**Point II**

**ANY DELAY BY NEIMAN MARCUS TO PAY
ALLEGED DEBTOR WAS DUE TO THE MISTAKE AND
CONFUSION BY AND BETWEEN NEIMAN MARCUS AND
ALLEGED DEBTOR, NOT RE MARCELLO'S AFFILIATE'S
INTERACTION WITH NEIMAN MARCUS**

In Point II, the Motion to Dismiss asserts that Alleged Debtor has a counterclaim for tortious interference with a contract and the business relationship between Alleged Debtor and Neiman Marcus and, therefore, Re Marcello's claim is subject to a bona fide dispute.  While the Motion to Dismiss generally correctly states the law that governs tortious interference with contract and business relationship claims, the Motion to Dismiss is based solely on speculation and lacks factual support.  The Motion to Dismiss also ignores bankruptcy law and misapplies the law that governs tortious interference with contract and business relationship claims.

First, the Motion to Dismiss fatally ignores that even if Alleged Debtor's counterclaims have merit, which they do not, counterclaims do not render a petitioning creditor's claim subject to bona fide dispute.  *See In re Elsa Design, Ltd.*, 155 B.R. 859, 869 (Bankr. S.D.N.Y 1993) (holding that a counterclaim that lender illegally locked out a borrower did not act to subject lender's money judgment claim to bona fide dispute); *see also In re Drexler*, 56 B.R. 960, 969 (Bankr. S.D.N.Y. 1986) (unlike affirmative defenses, which go to the underlying obligation, the "debtor's assertion of counterclaims, even if of substance, does not render a petitioner's claim subject to a bona fide dispute").

Second, Alleged Debtor's counterclaims have no merit against MB Americas or Re Marcello.  Alleged Debtor does not assert that Re Marcello took any action that interfered with Alleged Debtor's contract or business relationship with Neiman Marcus.  Therefore, Alleged Debtor seeks to bootstrap certain actions taken by Re Marcello's affiliate, MB Americas, as

19

actions taken by Re Marcello. The actions taken by MB Americas did not tortiously interfere with Alleged Debtor's contract or business relationship with Neiman Marcus, and any actions taken by MB Americas are not imputable to Re Marcello.

The Motion to Dismiss asserts that Alleged Debtor disputes its liability and amount owed to Re Marcello because it asserts Neiman Marcus held payments from Alleged Debtor "due to a dispute over a credit that [Neiman Marcus] sought from [Alleged Debtor] for approximately $38,000 worth of returned men's shoes." Without support, the Motion to Dismiss suggests that Mr. Wright authorized a return to vendor and credit to Neiman Marcus against amounts owed to Alleged Debtor. These assertions are based solely on speculation and have no factual support. Properly supported facts establish that Mr. Wright only authorized a *stock exchange between Neiman Marcus and MB Americas, not a return to Alleged Debtor*.

To prevail on a claim for tortious interference with a contract, a plaintiff must show (1) the existence of a valid contract between it and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the third-party's breach of contract without justification; (4) actual breach; and (5) damages resulting therefrom. *In re Bernard L. Madoff Inv. Securities, LLC*, 440 B.R. 282, 294 (Bankr. S.D.N.Y. 2010) (*citing Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006)). No facts suggest that MB Americas intentionally caused Neiman Marcus to breach its contract with Alleged Debtor. Instead, the facts establish that MB Americas acted justifiably by negotiating a stock exchange that was solely by and between and solely affected MB Americas and Neiman Marcus.

In preparation for replacing Alleged Debtor as MBIL's North American licensee starting on January 1, 2020, MB Americas contacted Neiman Marcus regarding prospective sales on or after January 1, 2020. As part of those discussions, Mr. Wright and others representing MB Americas made clear that they represented MB Americas and no other party, including not Alleged Debtor. Neiman Marcus requested that MB Americas agree to a stock exchange

whereby Neiman Marcus could exchange certain Spring 2019 Manolo Blahnik branded shoes originally sold by Alleged Debtor for a credit against Spring 2020 Manolo Blahnik branded shoes to be purchased by Neiman Marcus from MB Americas.  (Wright Decl., ¶¶ 11-13).

It was clear from Mr. Wright's conversations with Neiman Marcus that Neiman Marcus understood that MB Americas was separate from Alleged Debtor and that a credit would be applied to future purchases by Neiman Marcus from MB Americas, not past purchases from Alleged Debtor.  On January 14, 2020, Shelby Arnoldy from Neiman Marcus placed an urgent request for MB Americas to accept 117 items of men's stock for exchange, and she requested the address to which the items should be shipped.  On January 15, 2020, Herin Rodriguez, on behalf of MB Americas, authorized the requested exchange and provided a shipping address in Secaucus, New Jersey.  Despite direction from MB Americas to ship the stock to an address in Secaucus, New Jersey, Neiman Marcus mistakenly shipped this stock to Alleged Debtor's address on 54th Street in Manhattan.  By email dated January 28, 2020, Florencia Vasquez, on behalf of Alleged Debtor, contacted MB Americas and advised that Neiman Marcus mistakenly mailed this stock to Alleged Debtor and that Alleged Debtor had not authorized the return of stock.  Denny Rodriguez was copied on this email.  On January 28, 2020, Herin Rodriguez advised Shelby Arnoldy that Neiman Marcus shipped this stock to an incorrect address, and MB Americas made arrangements, in coordination with Alleged Debtor, for this stock to be picked up from Alleged Debtor and delivered to the Secaucus, New Jersey address.  MB Americas received and processed the exchanged stock and has internally accounted a credit of $34,154.40 in favor of Neiman Marcus relating to the exchanged items on February 13, 2020.  (Wright Decl., ¶¶ 14-20).

Neither Denny Rodriguez, nor anyone else on behalf of Alleged Debtor requested that MB Americas provide information to Neiman Marcus or otherwise assist Alleged Debtor with eliminating any mistake that Neiman Marcus made or any confusion by Neiman Marcus that

21

caused Neiman Marcus to hold any payment to Alleged Debtor.  Additionally, the email chain

attached as Exhibit A to the Denny Rodriguez Declaration filed in support of the Motion to

Dismiss provides direct support that, to the extent that Neiman Marcus held payments to Alleged

Debtor, it was due solely based on mistakes made by Neiman Marcus and/or Alleged Debtor or

confusion by and between Neiman Marcus and Alleged Debtor, not by the representations or

actions of MB Americas.  (Wright Decl., ¶¶ 21-22).

Again, MB Americas was clear in its representations with Neiman Marcus that the

exchange was not a return to Alleged Debtor, but an exchange with MB Americas in exchange

for a credit against future purchases.  Denny Rodriguez advised Neiman Marcus on February 14,

2020 and February 24, 2020 that Neiman Marcus had mistakenly held payments from Alleged

Debtor because any credits agreed by MB Americas to Neiman Marcus were separate from

Alleged Debtor's relationship with Neiman Marcus.  In a responsive email on March 6, 2020,

Neiman Marcus agreed with Mr. Rodriguez and authorized payment to Alleged Debtor.

(Rodriguez Decl., Exh. A; Wright Decl., ¶¶ 23-26; McManus Decl., ¶¶ 24-26).

Neiman Marcus knew that Re Marcello and Alleged Debtors were separate companies.

For that reason, an exchange and credit were negotiated, rather than a return to vendor.  By

January 28, 2020, Neiman Marcus was additionally put on notice that mailing the exchanged

stock to Alleged Debtor was a mistake.  Alleged Debtor was aware of this mistake no later than

January 28, 2020 as well.  In fact, Alleged Debtor made MB Americas aware of this mistake, and

MB Americas, in turn, made Neiman Marcus aware.  Alleged Debtor, through Denny Rodriguez,

further notified Neiman Marcus on February 14, 2020 and February 24, 2020, that Neiman

Marcus mistakenly sought a credit against the amount owed by Neiman Marcus to Alleged

Debtor.  By March 6, 2020, Neiman Marcus agreed that this credit was mistakenly applied, and

Neiman Marcus authorized payment to Alleged Debtor.  Neiman Marcus filed its bankruptcy

case on May 7, 2020.  Assuming Neiman Marcus has not paid Alleged Debtor, it is not clear why

Neiman Marcus did not pay Alleged Debtor between March 6, 2020 and May 7, 2020. Alleged Debtor no doubt had additional collection communications with Neiman Marcus between March 6, 2020 and May 7, 2020, but those communications, conveniently for Alleged Debtor, are absent from this Court's record.

Neither Re Marcello nor MB Americas interfered with Neiman Marcus paying Alleged Debtor. In addition, the mistake and confusion by and between Neiman Marcus and Alleged Debtor about the appropriate application of any credit for the exchanged stock were extinguished by March 6, 2020. These facts provide no support that Neiman Marcus did not pay Alleged Debtor due to interference by MB Americas or Re Marcello. Neiman Marcus, an insolvent company on the verge of bankruptcy did not pay Alleged Debtor. That was not due to the fault or actions of Re Marcello, MB Americas or MBIL.

**Point III**

**MB AMERICAS DID NOT ACT AS
RE MARCELLO'S AGENT WHEN NEGOTIATING
THE STOCK EXCHANGE CREDIT WITH NEIMAN MARCUS**

Because it does not claim that Re Marcello took any action to arguably interfere with Alleged Debtor's contract and business relationship with Neiman Marcus, Alleged Debtor first argues that MB Americas acted as Re Marcello's agent when negotiating the stock exchange credit with Neiman Marcus. The Motion to Dismiss asserts no facts to support this conclusion. The only action identified in Point III that Alleged Debtor asserts was taken by an agent on behalf of Re Marcello is Ms. McManus' efforts in support of Re Marcello's attempts to collect the debt owed to Re Marcello by Alleged Debtors. Because Ms. McManus is employed by Re Marcello's parent, MBIL, Alleged Debtor apparently argues that MBIL, Re Marcello, and MB Americas act interchangeably on behalf of each other and are each other's agents. This argument is wholly deficient.

Part of Ms. McManus responsibilities as Global General Counsel for MBIL, is to provide legal support for MBIL's subsidiaries and affiliates. (McManus Decl., ¶ 17). In that limited capacity, she acts as the agent of MBIL's subsidiaries and affiliates, including Re Marcello. The Motion to Dismiss cites no authority to suggest that a limited agent is also the general agent of its principal. No such authority exists. Nor does the Motion to Dismiss cite any authority to take the next substantial and illogical leap suggested by Alleged Debtor - that Ms. McManus's actions as a limited agent for Re Marcello in one context necessarily conflates that all actions taken by any agent of any of the three independent companies - MBIL, MB Americas, and Re Marcello - are necessarily on behalf of all others. No such authority exists.

Alleged Debtor's agency argument has no basis in fact or law. As argued and applied in the Motion to Dismiss, Alleged Debtor's agency argument is nothing other than an alter ego argument in disguise - that if a representative of one company serves as the agent for another, the companies have no distinct identity. This argument ignores that the law expressly provides for the independence of separate companies if the companies are maintained distinctly. As is established in the next Point, Re Marcello is an independent company that is maintained distinctly from MBIL and MB Americas, and Alleged Debtor's alter ego argument also fails.

### Point IV

**MBIL, MB AMERICAS, AND RE MARCELLO
ARE NOT ALTER EGOS OF EACH OTHER**

Under New York law, an alter ego claim fails unless a company is so dominated by an individual or another company and its separate entity is so ignored that it primarily transacts the dominator's business as its alter ego. *See Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 827, 628 N.Y.S.2d 855 (3rd Dept., 1995). All facts evidence that Re Marcello is not dominated by MBIL or MB Americas and that it was formed and is maintained as a separate company.

Alleged Debtor asserts that Re Marcello is MBIL's and MB Americas' alter ego based solely on speculation and by making the illogical leap that since Ms. McManus supports Re Marcello's legal efforts, all three must be alter egos. The concrete facts refute this speculation.

Since it was acquired by MBIL, Re Marcello has been managed by a five member board of directors, including Mr. Bruno Re, Ms. Eva Kristina Hülsebus, Ms. Giuseppa Galazzi, Mr. Frederic Boudet, and Ms. McManus. A quorum of four directors is necessary to make management decisions on behalf of Re Marcello. Re Marcello transacts business separately from its parent, MBIL, and affiliates also wholly-owned directly or indirectly by MBIL, including MB Americas. Re Marcello's board of directors differs from the board of directors of MBIL and MB Americas. The board of directors for MBIL is Mr. Manolo Blahnik, Ms. Eva Kristina Hülsebus, and Ms. Evangelina Rosa Hülsebus. A quorum of two directors is necessary to make management decisions on behalf of MBIL. MB Americas is an indirect wholly-owned subsidiary of MBIL. MB Americas is managed by its sole member, Manolo Blahnik Americas (Holdings) Inc., which is wholly owned by MBIL. Ms. Eva Kristina Hülsebus is the sole director of Manolo Blahnik Americas (Holdings) Inc. (McManus Decl., ¶¶ 5-7).

Re Marcello maintains corporate financial records separately from MBIL and MB Americas. MB Americas and MBIL also maintain corporate financial records separately from Re Marcello and each other. Re Marcello holds corporate board of directors meetings and maintains corporate meeting records separately from MBIL and MB Americas. MB Americas and MBIL also hold management meetings and maintain management records separately from Re Marcello and each other. Re Marcello is and at all times has been adequately capitalized. Re Marcello's funds and property are utilized solely for the benefit of Re Marcello, and not for the benefit of MBIL or MB Americas. Re Marcello deals with MBIL at arm's length. MBIL purchases product from Re Marcello on arm's length terms designed to deliver a profit margin for Re Marcello that would be appropriate for unrelated, commercial parties doing business of

25

this nature.  MBIL in turn makes sales of Manolo Blahnik branded products to MB Americas on wholesale terms, again structured on arm's length terms to deliver a profit margin appropriate for unrelated, commercial parties doing business of this nature.  (McManus Decl., ¶¶ 8-12; Wright Decl., ¶¶ 4-5).  No facts support that Re Marcello is the alter ego of MBIL or MB Americas.

<u>**Point V**</u>

**ALLEGED DEBTOR IS NOT GENERALLY PAYING ITS DEBTS**

Section 303(h)(1) of the Bankruptcy Code requires the petitioning creditor to establish that the alleged debtor is generally not paying debts as they become due.  The "generally not paying" test calls for the consideration of four factors: "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct of its financial affairs." *See In re Euro-American Lodging Corp.*, 357 B.R. 700, 713 (Bankr. S.D. N. Y. 2007), *citing In re Fischer*, 202 B.R. 341, 350 (E.D.N.Y.1996).  The failure to pay just one significant creditor can support a finding that the debtor is generally not paying its debts.  *Id.*  "There is substantial authority for the proposition that even though an alleged debtor may owe only one debt, or very few debts, an order for relief may be granted where such debt or debts are sufficiently substantial to establish the generality of the alleged debtor's default."  *In re Fisher*, 202 B.R. at 350-51; *see also In re Century/ML Cable Venture*, 294 B.R. 9, 31 n. 37 (Bankr.S.D.N.Y.2003) ("The failure to pay a single debt can satisfy the requirement of generality where the debt is sufficiently substantial.").

It is clear that Alleged Debtor has not paid Re Marcello, and Alleged Debtor owes a significant sum to Re Marcello - €949,567.10.  Alleged Debtor's failure to pay Re Marcello, alone, is sufficient for this Court to find that Alleged Debtor is not generally paying its debts as they come due.

In addition, prior to filing this case, MBIL contacted other factories that sold goods to Alleged Debtor.  Based on those conversations, MBIL understood, and communicated to Re

26

Marcello, that Alleged Debtor had not regularly or timely paid two other factory creditors. On March 27, 2020, MBIL also inadvertently received a past-due collection demand meant solely for Alleged Debtor from Computer Generated Solutions, Inc. MBIL communicated this to Re Marcello as well. Re Marcello does not have additional information regarding the creditors of Alleged Debtor, which creditors remain unpaid, or the timing of payments to creditors of Alleged Debtor. Alleged Debtor did not provide this information in support of its Motion to Dismiss. Regardless of the number of creditors that Alleged Debtor has, bankruptcy court is the appropriate forum for settling Alleged Debtor's financial affairs. Alleged Debtor's failure to pay MBIL, and apparent inability to do so based on lack of funds, suggests that Alleged Debtor distributed substantial sums previously reported to exist to its owners as preferential or fraudulent transfers. (McManus Decl., ¶¶ 31-33).

Coyly and conveniently, Alleged Debtor simply asserts it is paying its other creditors without identifying its other creditors, the amounts owed to the other creditors, or the timing of payments to any other creditors. Alleged Debtor must not be allowed to benefit from hiding these facts from Re Marcello and this Court. Re Marcello has met its burden to provide that Alleged Debtor is not generally paying its debts as they come due. Alleged Debtor provides no information to refute this conclusion.

### Point VI

### RE MARCELLO FILED THIS CASE IN GOOD FAITH, INCLUDING THAT THE INVOLUNTARY PETITION IS NOT SUBJECT TO DISMISSAL

As is demonstrated in this Memorandum in Opposition, Re Marcello appropriately filed this bankruptcy case and the Involuntary Petition is not subject to dismissal. Prior to filing the involuntary petition to commence this case, Re Marcello thoroughly investigated the facts supporting its filing and discussed the applicable law with its counsel that has entered an appearance in this case. (McManus Decl., ¶ 34). No basis exists to dismiss this bankruptcy case.

Instead, an Order of Relief should be entered and Alleged Debtor should be ordered to comply with all bankruptcy case obligations.

## **CONCLUSION**

The facts and law clearly provide that Alleged Debtor owes no less than the amount identified in the Involuntary Petition, €546,386.00, and that Alleged Debtor has no bona fide dispute about its debt to Re Marcello.  The facts and law also clearly provide that Re Marcello is generally not paying its debts as they come due, and bankruptcy court is the appropriate forum to administer Alleged Debtor's liabilities and assets and to pursue preferential and fraudulent transfer claims.  This Court should deny the Motion to Dismiss, and Alleged Debtor's assets and liabilities should be administered in a Chapter 7 proceeding in this Court.

Dated: July 17, 2020
New York, New York

DENTONS US LLP

By:/s/  Robert A. Hammeke
Robert A. Hammeke
Lauren Macksoud
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800
Email:  robert.hammeke@dentons.com
Email:  lauren.macksoud@dentons.com

*Attorneys for Petitioning Creditor*

US_Active\115164780\V-2