UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MANOLO BLAHNIK USA, LTD.,<br><br>Alleged Debtor. | No. 20-11102 (MG)<br><br>Chapter 7 |

# MEMORANDUM OF LAW SUPPORTING MANOLO BLAHNIK USA, LTD.'S <u>MOTION FOR REARGUMENT OF ITS MOTION TO DISMISS</u>

POLSINELLI PC
Jason A. Nagi
Morgan C. Fiander
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
jnagi@polsinelli.com
mfiander@polsinelli.com

*Attorneys for Alleged Debtor*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

THE COURT'S OPINION ........................................................................................................ 2

FACTS ........................................................................................................................................ 2

ARGUMENT .............................................................................................................................. 4

Point I - Alleged Debtor Meets the Requirements for Reargument............................................. 4

A.        Standard for Reargument ................................................................................................ 4

Point II - The Court Overlooked Key Factual Matters That Influenced The Opinion ................... 4

A.        The January 2020 Payment did not Cover all of the November 2019 Creditor
          Invoice, and, Therefore, a Portion of the November 2019 Creditor Invoice is
          Disputed. ......................................................................................................................... 4

Point III - The Entire Alleged Debt is Subject to a Bona Fide Dispute ........................................ 6

Point IV - Alternatively, The Court Should Explicity Permit MBUSA To Assert The
Above-Referenced Defense ......................................................................................................... 7

CONCLUSION............................................................................................................................ 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anglo-american Ins. Group, P.L.C. v. Calfed, Inc.*,
   940 F.Supp. 554 (S.D.N.Y. 1996) ...................................................................................4

*In re General Vision Services, Inc.*,
   352 B.R. 25 (Bankr. S.D.N.Y. 2006) .................................................................................5

*Hernandez v. Boucherie LLC*,
   2019 WL 3765750 (S.D.N.Y. 2019) ..................................................................................5

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
   729 F.3d 99 (2d Cir. 2013)..................................................................................................5

*Sequa Corp. v. GBJ Corp.*,
   156 F.3d 136 (2d Cir. 1998)................................................................................................5

*In re Stylesite Marketing, Inc.*,
   2001 WL 1312 (Bankr. S.D.N.Y. 2001) ............................................................................4

*Winkler v. Metropolitan Life Ins.*,
   340 F.Supp.2d 411 (S.D.N.Y. 2004)..................................................................................4

**Other Authorities**

Local Rule 9023-1................................................................................................................4

Alleged Debtor Manolo Blahnik USA, Ltd. ("**MBUSA**"), by and through its counsel, Polsinelli PC, moves this Court for entry of an Order granting Reargument of MBUSA's Motion to Dismiss the Involuntary Bankruptcy Petition (the "**Motion to Dismiss**") filed against MBUSA by Calzaturificio Re Marcello S.R.L. ("**Creditor**") (the "**Involuntary Petition**").

## PRELIMINARY STATEMENT

On August 18, 2020, the Court issued a written memorandum of opinion (the "**Opinion**"), denying MBUSA's Motion to Dismiss the Involuntary Petition, finding that even though there was a dispute as to the amount of certain debt between Creditor and MBUSA, the dispute related only to one invoice—the December 2019 Creditor Invoice—but that the November 2019 Creditor Invoice, was paid for in full by Neiman Marcus, incorrectly correlating the November 2019 Creditor Invoice with MBUSA's First Purchase Order (defined below). This determination, however, was not briefed by either side, and, is incorrect. In fact, a portion of the November 2019 Creditor Invoice concerning shipment numbers 1480 and 1367, relate to the Unpaid PO (as defined below).

Because neither party specifically addressed whether there was a correlation or other connection between what the Court termed as the November 2019 Creditor Invoice and the December 2019 Creditor Invoice (the "**Creditor Invoices**") from Creditor to MBUSA, and the purchase orders sent from MBUSA to Neiman Marcus (the "**Neiman Marcus POs**"), MBUSA did not address this issue. And while the Court's correlation is understandable, as MBUSA received a $601,741.90 payment which may have been similar to the amount of dollars that Creditor's claim was converted to from Euros, the similarity in number is a complete coincidence.

Consequently, MBUSA submits that the Court overlooked key factual matters that influenced its opinion on the Motion to Dismiss and MBUSA is therefore entitled to reargument.

1

## THE COURT'S OPINION

The Court, in issuing its Opinion, concluded that there were "two separate transactions"—the November 2019 Creditor Invoice, and the December 2019 Creditor Invoice—and that MBUSA was only disputing the December 2019 Creditor Invoice. (Opinion, at 19.) The Court found that there was no dispute as to the claim in the amount of €546,386.00 "relating to the First Neiman Marcus Purchase Order." (*Id.*) The Court reasoned that Neiman Marcus paid MBUSA for the First Neiman Marcus Purchase Order, which the Court believed to be directly related to the November 2019 Creditor Invoice. The Court also found that MBUSA's tortious interference claim created "material issues of disputed fact" that rendered the claim for the second transaction, the December 2019 Creditor Invoice, subject to a bona fide dispute. (*Id.*)

## FACTS[1]

In July 2019, MBUSA placed an order for shoes with Creditor. Creditor shipped the shoes to MBUSA between October 15, 2019 and December 15, 2019. Between October 15, 2019 and December 31, 2019, MBUSA shipped the shoes to Neiman Marcus. [Dkt # 12 (Declaration of Denny Rodriguez, dated June 23, 2020 (the "**Rodriguez Decl.**") at ¶ 4.]

On or about November 3, 2019, MBUSA issued Neiman Marcus a purchase order *for shoes to be shipped to Neiman Marcus in November and December of 2019* (the "**First Purchase Order**"). [Dkt #12 at ¶ 5.] Significantly, the amount of the First Purchase Order was for far greater, approximately $120,000 more than the €546,386.00/$601,447.60 that the Court used to correlate the First Purchase Order with the November 2019 Creditor Invoice. The First Purchase Order was issued for $721,893.00 and not for $601,741.9—the amount that Neiman Marcus ultimately paid on the First Purchase Order on January 9, 2020 (the "**January 2020 Payment**"). [Dkt #12 at ¶5.]

---

[1] For purposes of brevity, MBUSA will not recite the entire detailed factual history here and refers the Court to the Memorandum of Law in Support of MBUSA's Motion to Dismiss.

2

In addition, it is a matter of public record that, on January 9, 2020, $1 was worth €.9, valuing the January 2020 Payment (of $601,741.90) at **€541,567.71, rather than €546,386** (the amount of the November 2019 Creditor Invoice), and indicating further that there is no correlation between the First Purchase Order and the November 2019 Creditor Invoice.[2]

Similarly, as the Rodriguez Decl. stated, the second purchase order issued to Neiman Marcus which remains unpaid (the "**Unpaid PO**"), related to shoes shipped to Neiman Marcus "*during the months of October through December 2019*." [Dkt # 12, at ¶ 6] (emphasis added). In other words, the Unpaid PO covered more months, and the same months, that the First Purchase Order covered.

As such, the record provided supports crossover between the Unpaid PO and *both* the November 2019 Creditor Invoice, and the December 2019 Creditor Invoice. (Declaration Certifying Crossover of Denny Rodriguez, dated September 1, 2020 ("**Rodriguez Crossover Decl.**"), at ¶ 5-7.)

In fact, as set forth in the Rodriguez Crossover Decl., portions of two shipments contained in the November 2019 Creditor Invoice, numbers 1480 and 1367, relate to the Unpaid PO. In other words, the merchandise contained in those shipments on the November 2019 Creditor Invoice, were not paid for.

MBUSA therefore is disputing both the November 2019 and December 2019 Creditor Invoices because the interference relates to merchandise contained in both Creditor Invoices.

In short, the Creditor Invoices do not directly correspond with the First Purchase Order and the Unpaid PO. Rather nearly all of the merchandise that was not paid for, due to Affiliate's interference, was merchandise contained in both Creditor Invoices. As such, the Court's

---

[2] https://www.xe.com/currencytables/?from=USD&date=2020-01-09
https://markets.businessinsider.com/currency-converter/united-states-dollar_euro

3

determination in the Opinion that MBUSA only disputes the December 2019 Creditor Invoice, and not the November 2019 Creditor Invoice, is incorrect.

## ARGUMENT

### Point I

### ALLEGED DEBTOR MEETS THE REQUIREMENTS FOR REARGUMENT

**A.    Standard for Reargument**

Local Rule 9023-1 provides that a motion for Reargument "must set forth concisely the matters or controlling decisions which counsel believes the Court has not considered." To show entitlement to, the moving party "must demonstrate that the court overlooked controlling decisions or *factual matters* 'that might materially have influenced its earlier decision.'" *In re Stylesite Marketing, Inc.*, 2001 WL 1312, *1 (Bankr. S.D.N.Y. 2001) (quoting *Anglo-american Ins. Group, P.L.C. v. Calfed, Inc.*, 940 F.Supp. 554, 557 (S.D.N.Y. 1996)) (emphasis added). The rule providing for reargument is "narrowly construed and strictly applied in order to avoid repetitive arguments already considered by the Court." *Winkler v. Metropolitan Life Ins.*, 340 F.Supp.2d 411, 413 (S.D.N.Y. 2004).

### Point II

### THE COURT OVERLOOKED KEY FACTUAL
### MATTERS THAT INFLUENCED THE OPINION

**A.    The January 2020 Payment did not Cover all of the November 2019 Creditor Invoice, and, Therefore, a Portion of the November 2019 Creditor Invoice is Disputed.**

In reviewing the Opinion, it is clear that the Court mistakenly conflated two key pieces of information in coming to its conclusion. First, the Court believed that the January 2020 payment by Neiman Marcus on the First Purchase Order was directly related to the November 2019 Creditor Invoice. Specifically, the Court stated that "Petitioning Creditor sent the Alleged Debtor invoices

4

in November 2019 relating to its manufacture of Manolo Blahnik branded shoes to fulfil the First Neiman Marcus Purchase Order." (Opinion, at 6-7.) (*See also*, "Petitioning Creditor sent the Alleged Debtor invoices in December 2019 relating to its manufacture of Manolo Blahnik shoes to fulfil the Second Neiman Marcus Purchase Order." (*Id.* at 7.)) These conclusions are incorrect.

While Neiman Marcus did pay MBUSA $601,741.90 on the First Purchase Order on January 9, 2020, and the amount paid on the First Purchase Order was *similar* to the amount identified on the November 2019 Creditor Invoice, *these amounts are not the same*, an important distinction that highlights the Court's misapprehension of facts.

Second, as MBUSA noted in its moving papers, the amount of the First Purchase Order was $721,893.00. [Dkt #12, ¶ 5.] That amount was reduced following approved deductions by Neiman Marcus. The amount of the First Purchase Order, however, did not correlate with the November 2019 Creditor Invoice, because they are not directly related.

Third, when converted, the amount of the January 2020 Payment (of $601,741.90) converts to ***€541,567.71, rather than €546,386*** (the amount of the November 2019 Creditor Invoice), and indicating further that there is no correlation between the First Purchase Order and the November 2019 Creditor Invoice.[3]

Fourth, as the Rodriguez Decl. stated, the Unpaid PO, which MBUSA issued to Neiman Marcus, related to shoes shipped to Neiman Marcus "***during the months of October through December 2019***" [Dkt # 12, at ¶ 6], showing that there was crossover between the November 2019 Creditor Invoice and the December 2019 Creditor Invoice (emphasis added).

Finally, as set forth in the Rodriguez Crossover Decl., portions of two shipments contained in the November 2019 Creditor Invoice, numbers 1480 and 1367, relate to the Unpaid PO. As

---

[3] https://www.xe.com/currencytables/?from=USD&date=2020-01-09
https://markets.businessinsider.com/currency-converter/united-states-dollar_euro

such, the merchandise contained in those shipments on the November 2019 Creditor Invoice, were *also* contained in the Unpaid PO, and both Creditor Invoices are, therefore, disputed.[4]

### Point III

### THE ENTIRE ALLEGED DEBT IS SUBJECT TO A BONA FIDE DISPUTE

The Court found that MBUSA's tortious interference claims did raise genuine issues of material fact, which rendered that debt subject to a bona fide dispute. (Opinion, at 19.) In coming to this conclusion, the Court found that there was sufficient factual support for MBUSA's allegation that Affiliate and/or Parent directly caused Neiman Marcus to not pay the Unpaid PO. (*Id.*, page 23.) The Court also found that there were factual questions raised as to whether Affiliate and Parent's interference can be imputed to Creditor. (*Id.*) Because there are genuine issues of material fact, the Court determined that a bona fide dispute exists as to the amount or liability of the debt.

MBUSA submits that, because the tortious interference claims are related to *both* "transactions," and that the *entire* amount of debt alleged by Creditor is therefore subject to a bona fide dispute. The tortious interference occurred with respect to merchandise that is found in the November 2019 Creditor Invoice and the December 2019 Creditor Invoices. The issues of material fact, then, are raised as to both "transactions," and therefore both transactions, and the entire alleged debt, are subject to a bona fide dispute and render Creditor ineligible to maintain this Involuntary Petition against MBUSA.

---

[4] *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (Overturning denial of motion to reopen trial record, stating "[b]ecause neither party anticipated the district court's reliance on [plaintiff]'s tax benefits in calculating the amount owing … [as] neither party had introduced evidence as to the details of any such tax benefits." *Hernandez v. Boucherie LLC*, 2019 WL 3765750, *2 (S.D.N.Y. 2019) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)) ("A motion for reconsideration should be granted only when [a party] identifies 'an intervening change of controlling law, the availability of new evidence, or *the need to correct a clear error* or prevent manifest injustice.'") (emphasis added); *In re General Vision Services, Inc.*, 352 B.R. 25 (Bankr. S.D.N.Y. 2006) (considering an attorney declaration).

**Point IV**

**ALTERNATIVELY, THE COURT SHOULD EXPLICITLY PERMIT
MBUSA TO ASSERT THE ABOVE-REFERENCED DEFENSE**

Alternatively, and in light of the above, should the Court decline to dismiss the Involuntary Petition, the Court should explicitly permit MBUSA to respond to the Involuntary Petition by asserting the above-referenced facts.

**CONCLUSION**

MBUSA respectfully submits that the Court overlooked key factual matters in coming to its conclusion in the Opinion on MBUSA's Motion to Dismiss, as there is no direct relation between the Creditor Invoices and the Neiman Marcus Purchase Orders. Further, because the Court found that MBUSA's tortious interference claims created a bona fide dispute as the December 2019 portion of the alleged debt, and because those claims also relate to at least some of the November 2019 Creditor Invoice, the *entire* alleged debt is subject to a bona fide dispute and the Involuntary Petition must be dismissed in its entirety.

POLSINELLI PC

By:    */s/ Jason A. Nagi*
      Jason A. Nagi
      Morgan C. Fiander
      600 Third Avenue, 42nd Floor
      New York, New York 10016
      (212) 684-0199
      jnagi@polsinelli.com
      mfiander@polsinelli.com

      *Attorneys for Alleged Debtor*

74617500