POLSINELLI PC
Jason A. Nagi
Morgan C. Fiander
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
jnagi@polsinelli.com

*Attorneys for Alleged Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MANOLO BLAHNIK USA, LTD.,<br><br>Alleged Debtor. | Case No. 20-11102-mg<br><br>Chapter 7 |

## ALLEGED DEBTOR'S ANSWER TO THE INVOLUNTARY PETITION

Alleged Debtor Manolo Blahnik USA, Ltd. ("**MBUSA**"), by and through its counsel Polsinelli PC, for its Answer to the Involuntary Petition filed against it by creditor Calzaturificio Re Marcello S.R.L. ("**Creditor**") (the "**Involuntary Petition**"), states as follows:

1. MBUSA denies paragraph 1 of the Involuntary Petition.

2. MBUSA admits paragraph 2 of the Involuntary Petition.

3. Paragraph 3 of the Involuntary Petition makes no allegations, and, therefore, no response is required. To the extent a response is required, it is denied.

4. Paragraph 4 of the Involuntary Petition makes no allegations, and, therefore, no response is required. To the extent a response is required, it is denied.

5. MBUSA admits paragraph 5 of the Involuntary Petition.

6. Paragraph 6 of the Involuntary Petition makes no allegations, and, therefore, no response is required. To the extent a response is required, it is denied.

7. MBUSA admits paragraph 7 of the Involuntary Petition.

8. MBUSA admits paragraph 8 of the Involuntary Petition.

9. MBUSA admits paragraph 9 of the Involuntary Petition.

10. MBUSA admits paragraph 10 of the Involuntary Petition.

11. MBUSA denies paragraph 11 of the Involuntary Petition.

12. MBUSA denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Involuntary Petition.

13. MBUSA denies paragraph 13 of the Involuntary Petition.

## **PRELIMINARY STATEMENT**

1. Marcello alleges in the Involuntary Petition that MBUSA owes Creditor $601,447.60, converted from €546,386.00, for goods sold (the "**Alleged Debt**").

2. MBUSA contests the amount of the Alleged Debt.

3. MBUSA contests the liability of the Alleged Debt.

4. MBUSA contests the allegation that it is not paying its debts as they come due. MBUSA has refused to pay Creditor (defined below) because Creditor and its fellow, Manolo Blahnik family of companies, directly interfered with MBUSA's rights to payment. MBUSA has been paying all other creditors.

5. Creditor's basis for claiming the Alleged Debt is a set of invoices from November 2019 sent from Creditor to MBUSA.[1] Included in these invoices are shipments which contained

---

[1] MBUSA is aware that Creditor claims a set of invoices from December 2019 are also due and owing. These amounts, however, were not included in the Involuntary Petition and therefore are not addressed here. MBUSA, however, also disputes any alleged debt arising from the December 2019 invoices based on the same facts: merchandise included in the shipments on the December 2019 invoices was also included on the Unpaid PO (defined later).

2

merchandise that was returned against MBUSA without MBUSA's knowledge or permission, by a corporate entity in the broader Manolo Blahnik corporate family which also includes Creditor.

6. MBUSA has valid claims for tortious interference with contractual relations against Creditor and its corporate family. Specifically, entities within the Manolo Blahnik corporate family directly caused a MBUSA customer to refuse to pay an approximately $790,000.00 purchase order owed to MBUSA. Certain merchandise contained in that purchase order was also contained in the shipments included in the set of invoices Creditor claims are due and owing to it by MBUSA.

7. MBUSA therefore contests this Involuntary Petition.

## STATEMENT OF FACTS

### *The Neiman Marcus Transactions*

8. MBUSA formerly held the exclusive license to sell both women's and men's Manolo Blahnik shoes in the United States. In 2019, MBUSA declined to renew its licensing agreement which expired on December 31, 2019 on the terms offered by the licensor.

9. A new and separate entity, Manolo Blahnik Americas, LLC ("**Affiliate**"), was created by Creditor's parent company, Manolo Blahnik International, Ltd. ("**Parent**"), to take over North American operations.

10. In June 2019, Neiman Marcus placed an order with MBUSA for a collection of shoes.

11. In July 2019, MBUSA placed an order with Creditor for a variety of shoes on behalf of a number of customers including, but not limited to, Neiman Marcus. Notably, not all shoes ordered by Neiman Marcus were ordered with or made by Creditor.

12. The terms of the order was "net 90 days," meaning that payment was due the end of the month when the shoes were shipped.

13.  As a result, for any shoes shipped in November 2019, payment was due on March 1, 2020.

14.  Creditor shipped shoes to MBUSA between October 15, 2019 and December 19, 2019. These shipments included shoes for Neiman Marcus in addition to a variety of other customers.

15.  On or about November 3, 2019, MBUSA issued a purchase order to Neiman Marcus in the amount of $721,893.00 for shoes shipped to Neiman Marcus in November and December 2019 (the "**First Purchase Order**"). After approved deductions, on January 9, 2020, Neiman Marcus paid MBUSA $601,741.90 on the First Purchase Order (the "**January 2020 Payment**").

16.  On or about December 19, 2019, MBUSA issued a purchase order to Neiman Marcus in the amount of $790,740.75 for shoes shipped to Neiman Marcus in October through December 2019 (the "**Unpaid PO**").

17.  Thereafter, on or about January 31, 2020, MBUSA paid Creditor $663,994.89.

18.  On February 14, 2020, MBUSA sent an email to Neiman Marcus requesting payment of the Unpaid PO that was more than thirty (30) days past due. In response, Neiman Marcus informed MBUSA that payment of the entire Unpaid PO was being held due to a dispute over a credit Neiman Marcus sought and was expecting for approximately $38,000.00 worth of men's shoes (the "**Credit Dispute**"). Neiman Marcus alleged these shoes were returned to MBUSA and it was told it would receive a credit for same.

### *Tortious Interference by the Manolo Blahnik Corporate Family*

19.  As it turned out, Andrew Wright, a former employee of Parent and the current President of Affiliate, negotiated the return of MBUSA's merchandise without authority and

4

without the knowledge or permission of MBUSA. Andrew Wright has never been associated with MBUSA.

20. Wright, on behalf of Affiliate and Parent, negotiated the return of merchandise that he knew was MBUSA's and in fact could not have been Affiliate's merchandise because at the time the merchandise was sent to Neiman Marcus, Affiliate did not have a license to sell shoes.

21. Wright, acting on behalf of the Manolo Blahnik corporate family, negotiated with Neiman Marcus solely to incur favor with Neiman Marcus as Affiliate would be selling Manolo Blahnik goods to Neiman Marcus going forward.

22. Had Affiliate not interfered with MBUSA's relationship with Neiman Marcus, payment of the Unpaid PO would have been made in January 2020.

### *The Inter-Related Entities in the Manolo Blahnik Corporate Family*

23. By Transition Deed dated November 25, 2019, MBUSA, Parent, and another entity in the Manolo Blahnik corporate family, Manolo Blahnik Worldwide Limited ("**Worldwide**"), entered into an agreement addressing the rights and responsibilities of each entity as MBUSA began to wind down operations as the licensing agreement came to an end (the "**Transition Deed**").

24. While Affiliate was not a party to the Transition Deed, Parent and Worldwide entered into the Transition Deed for the benefit of Affiliate so that Affiliate could sell Manolo Blahnik shoes in North America. Schedule E to the Transition Deed required MBUSA to set up an automated greeting for MBUSA's telephone number to direct callers to Affiliate's President, Wright. Section 4.1(b)(ii)(B) of the Transition Deed required MBUSA to set up an automatic reply for its email addresses which send the party to Wright's phone number and an Affiliate email address. Schedule C to the Transition Deed, a final daily inventory tally, was executed by MBUSA

5

and sent to Wright on behalf of Affiliate. Wright was also on a number of emails related to the Transition Deed where he discussed return of physical shoe samples, outstanding Manolo Blahnik branded "elements" at MBUSA's physical retail location, and requested the Daily Tally, all as per Sections 5.14 and 5.15 and Schedule C of the Transition Deed. Further, in an out of office automated reply, Wright identified "Americas" as one of his covered regions. His email address has the identical domain to Parent.

### *The Invoices from Creditor to MBUSA*

25. In relation to the collection of shoes ordered in July 2019, Creditor sent MBUSA two invoices: the November 2019 Creditor Invoice, and the December 2019 Creditor Invoice (the "**Creditor Invoices**").

26. The Creditor Invoices, importantly, do not correlate or correspond to the purchase orders issued by MBUSA to Neiman Marcus. To be clear: the November 2019 Creditor Invoice does not directly correspond to the First Purchase Order, and the December 2019 Creditor Invoice does not directly correspond to the Unpaid PO.

27. Merchandise on the Unpaid PO was included in both Creditor Invoices. Put another way, there is crossover between the Unpaid PO and both the November 2019 and December 2019 Creditor Invoices.

### *Creditor Demands Payment*

28. While investigation was ongoing between MBUSA and Neiman Marcus, Creditor demanded payment from MBUSA. MBUSA did not make any payment because Neiman Marcus was still withholding payment on the Unpaid PO. That withholding was a direct result of Parent and Affiliate's interference in MBUSA's relationship with Neiman Marcus.

6

29. By March 18, 2020, as a result of the COVID-19 pandemic, Neiman Marcus shut down all in-person retail sales. On May 8, 2020, Neiman Marcus filed a petition for reorganization under Chapter 11 of Title 11 of the Bankruptcy Code.

30. Meanwhile, Creditor copied Georgina McManus, Global General Counsel for Parent, in an email to MBUSA dated March 10, 2020, requesting payment from MBUSA. McManus then responded directly to MBUSA requesting an explanation for the "nature of the delay in this payment."

31. MBUSA advised that Neiman Marcus was holding back a payment of close to $800,000.00 due to negotiations between Neiman Marcus and Affiliate, and that MBUSA would not pay Creditor until those funds were released.

32. McManus then demanded MBUSA pay Creditor immediately, arguing both that all of the entities were separate despite that McManus was acting on behalf of Creditor, in her capacity as general counsel for Parent, which was not a party to any of the dealings between Creditor and MBUSA.

33. On March 25, 2020, McManus sent another email to MBUSA that she was "instructed to recover" the outstanding amounts "using all legal channels" and that if "the payment is not received by 5pm CET Friday, 27 March, [she] will have no option but to commence proceedings."

34. McManus, though technically Global Counsel for Parent, was acting on behalf of Creditor, blurring the lines between Parent and its affiliated companies and effectively creating one single entity, the combination of which interfered with MBUSA's contractual relationship with Neiman Marcus.

### *MBUSA's Other Debt and Accounts Receivable*

35.     Since January 2020 and continuing after the initiation of this Involuntary Petition, MBUSA has paid every single debt it has owed (the "**Debts Paid**"), except its debt to Creditor, solely because of Creditor's tortious interference.

36.     From January 1, 2020 through May 3, 2020 (one day prior to the filing of the Involuntary Petition), the Debts Paid by MBUSA totaled, approximately $5,218,600.48 paid to over twenty different creditors.

37.     The Debts Paid include a $663,957.40 payment to Creditor on January 31, 2020. This, notably, was before MBUSA discovered the tortious interference.

38.     MBUSA is paying its debts as they come due and has paid every creditor except for Creditor, whose bad faith actions have interfered with MBUSA's right to payment by Neiman Marcus.

39.     The only creditor that has not been paid is Creditor, because that debt is wholly and completely disputed.

40.     As such, this matter is solely a two-party dispute and the Court should abstain from hearing this case.

41.     In addition, MBUSA is still in the process of collecting accounts receivables as part of its regular business activities.

### *MBUSA's Tortious Interference Claim Against the Manolo Blahnik Corporate Family*

42.     MBUSA had a valid, enforceable contract with Neiman Marcus.

43.     Affiliate, acting on behalf of the entire Manolo Blahnik corporate family, directly, wrongfully, and tortiously interfered with that contract. Neiman Marcus withheld payment to MBUSA because of the tortious interference by Affiliate.

8

44. Affiliate knew of the contract and intentionally procured Neiman Marcus' breach thereof without justification, causing damage to MBUSA.

45. Based on the tortious interference by the entire Manolo Blahnik corporate family with the contractual relationship between MBUSA and Neiman Marcus, which directly caused Neiman Marcus to withhold nearly $800,000.00 in payment to MBUSA, MBUSA hereby contests the amount and the liability of the Alleged Debt.

46. MBUSA filed a Motion to Dismiss the Involuntary Petition. In opposition, Creditor attached two invoices as Exhibits A and B to the Declaration of Cardile Antonia. Exhibit A contained invoices for November 2019. Because the terms were "net 90 days," payment was not due until March 1, 2020, after the tortious interference with MBUSA's right to payment.

47. Exhibit B contained invoices for December 2019, totaling €403,181.10. However, all the shoes MBUSA received from Creditor in December 2019, totaled €103,183.90, or $122,788.84, and not €403,181.10.

48. Because the terms were "net 90 days," payment of the lesser amount was not due until April 1, 2020, or after the interference with MBUSA's right to payment.

49. Consequently, MBUSA disputes all debts allegedly owed to Creditor, including Exhibits A and B to the Declaration of Cardile Antonia.

## **DEFENSES**

50. Creditor has failed to state a claim upon which relief can be granted.

51. Creditor's claims are barred by the doctrine of unclean hands.

52. Creditor's claims are barred by Creditor's own tortious conduct.

53. Creditor failed to mitigate its alleged damages.

54. MBUSA is not "generally not paying [its] debts as such debts become due" and therefore the Involuntary Petition is not proper.

55. Creditor does not have standing to bring the Involuntary Petition.

56. Any damages were caused by Creditor's own culpable conduct.

57. Creditor filed the Involuntary Petition in bad faith and is liable to damages to MBUSA for bad faith.

58. The Court should abstain from this matter as it is a two-party dispute, as more fully set forth above, because MBUSA has paid, and continues to pay all of its debts as they come due.

59. Creditor's claims are barred by setoff and recoupment.

**WHEREFORE**, MBUSA contests the entirety of the Involuntary Petition and requests that the Court dismiss the Involuntary Petition against MBUSA, award MBUSA damages for Creditor's bad faith filing, and award any such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        September 8, 2020

POLSINELLI PC

By: */s/ Jason A. Nagi*
    Jason A. Nagi
    Morgan C. Fiander
    600 Third Avenue, 42nd Floor
    New York, New York 10016
    (212) 684-0199
    jnagi@polsinelli.com

*Attorneys for Alleged Debtor*

74690053